CHARLES AND NEREYDA C. SUIVSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Suivski v. Commissioner
Docket No. 22495-89
United States Tax Court
T.C. Memo 1993-291; 1993 Tax Ct. Memo LEXIS 294; 66 T.C.M. (CCH) 23; July 7, 1993, Filed *294 For petitioners: Jorge Rodriguez-Chomat. For respondent: Linda J. Wise. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(4) [1] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE COUVILLION, Special Trial Judge: This case is part of a national litigation project which has been identified by respondent as "McIntyre Coal Project -- CN", so designated after the promoter, Richard W. McIntyre (Mr. McIntyre). In Coggin v. Commissioner, T.C. Memo. 1993-209 (the Coggin case), this Court considered two promotions of Mr. McIntyre, Energy Resources, Ltd. (ERL), and Virginia Partners, Ltd., two limited partnerships *295 involved in coal mining. In the instant case, petitioner Charles Suivski was a limited partner in ERL, and trial of this case was limited to adjustments relating to ERL. In addition to the ERL issue, the trial of this case also involved consideration as to whether petitioner Nereyda C. Suivski, wife of Charles Suivski, qualifies as an innocent spouse under section 6013(e), and whether respondent is barred from assessment and collection of taxes for certain of the years at issue. These issues have been considered only as they relate to the ERL issue. There are other adjustments in the notice of deficiency which are not related to ERL. These adjustments were not considered in the trial of this case and remain to be considered. Respondent determined the following deficiencies in petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2) 1977
$  2,028
$   101
--
1978
8,467
423
--
1979
3,411
171
--
1981
39,376
1,969
50% of the interest due on $ 39,376 In the notice of deficiency, respondent also determined that, for 1977, *296 1978, and 1981, petitioners were liable for additional interest under section 6621(c). Respondent, in an amended answer, asserted an addition to tax under section 6659 against petitioners for 1981. The issues are: (1) Whether the statute of limitations under section 6501 bars respondent from assessment and collection of taxes against petitioners for the years 1977, 1978, and 1979 with respect to adjustments related to ERL; (2) whether the deductions and credits claimed by petitioners with respect to ERL should be disallowed on the ground that ERL was a sham and devoid of economic substance, as found by this Court in the Coggin case; (3) if such deductions and credits are not allowable, whether petitioners are otherwise entitled to a deduction to the extent of the cash invested by petitioner Charles Suivski in ERL; (4) whether petitioners are liable for the additions to tax and the increased rate of interest; and (5) whether petitioner Nereyda C. Suivski qualifies for relief under section 6013(e) as an innocent spouse. FINDINGS OF FACT Some of the facts were stipulated and are so found. Petitioners resided at Concord, California, at the time their petition was filed. Petitioners *297 filed joint individual income tax returns for the years at issue. Petitioner Charles Suivski is an engineer and has degrees in electrical and mechanical engineering. During the period from September 10, 1977, through January 21, 1981, Mr. Suivski was employed by Arabian American Oil Co. (ARAMCO) and resided in Saudi Arabia. Petitioner Nereyda Suivski completed 2 years of junior college and received an associate's degree. Immediately prior to 1978, Mrs. Suivski was employed by Borden, Inc. (Borden), as an assistant to the executive in charge of Borden's Latin American Division in Miami, Florida. After moving to Saudi Arabia with Mr. Suivski, Mrs. Suivski was employed by ARAMCO during the period from March 26, 1978 through January 21, 1981. Subsequent to their return to the United States, Mrs. Suivski was employed as a bank officer with Bank of America in California and Florida. After joining ARAMCO, Mr. Suivski came to generally understand that, since he and Mrs. Suivski were working and residing outside the United States, they would be entitled to claim the benefits of section 911 and exclude from taxable income compensation they earned from ARAMCO. As a result, Mr. Suivski, *298 in late 1979 or early 1980, sought to obtain assistance from a competent professional return preparer to prepare petitioners' 1979 joint income tax return. Mr. Suivski asked Mrs. Suivski's former boss at Borden whether that executive could recommend a return preparer. A tax return preparer named M. W. Fenton was recommended to petitioners. In late 1979 or early 1980, Mr. Suivski met with Mr. Fenton and retained his firm to prepare petitioners' 1979 return. Robert Carey, an associate of Mr. Fenton's, subsequently prepared petitioners' 1979 return. During a second meeting between Mr. Suivski, Mr. Fenton, and Mr. Carey concerning the preparation of the 1979 return, Mr. Fenton and Mr. Carey also solicited Mr. Suivski's investment in a housing project venture. They represented that Mr. Suivski would earn at least a 34 percent annual return on a $ 75,000 investment. Mr. Suivski consulted his wife's former boss regarding the investment Mr. Fenton and Mr. Carey proposed. The boss replied that he had made a prior investment on the advice of Mr. Fenton and was happy with the results. In late 1979 or early 1980, Mr. Suivski invested $ 75,000 in the housing project venture Mr. Fenton *299 and Mr. Carey recommended. In a December 18, 1980 letter, the company promoting the housing project venture advised Mr. Suivski that Mr. Carey would serve as the company's "legal representative" in the Miami, Florida area. On or about January 21, 1981, Mr. Suivski received a $ 27,472.13 payment which ostensibly represented the first year's return on his investment in the housing venture. Although the housing venture ultimately failed and Mr. Suivski lost most of his $ 75,000 investment, the $ 27,472.13 payment led Mr. Suivski to initially believe that the housing project was a very good investment. Prior to 1981, Mr. Carey proposed additional investments to Mr. Suivski. One of these investments was a gas pipeline venture. After reviewing the offering materials on this project, Mr. Suivski, based on his knowledge and experience in the oil and gas industry, concluded the project was not economically feasible and did not invest in it. In addition to the housing project, however, Mr. Suivski invested in other ventures recommended by Mr. Carey, including a gold mining project. On Mr. Carey's recommendation, Mr. Suivski, in 1980, became a limited partner in ERL. Mr. Suivski made *300 a total cash investment of $ 45,000 in ERL, which he paid in three annual installments of $ 15,000 from 1980 through 1982. The last installment was paid on or about June 12, 1982. At least by June 15, 1981, Mr. Suivski had been apprised by Mr. Carey that Mr. Carey was acting as a "registered securities representative" for ERL's promoter. At some point, Mr. Fenton and Mr. Carey terminated their business relationship. Although Mr. Carey had prepared petitioners' 1979 return, Mr. Carey subsequently referred Mr. Suivski to another tax consultant to prepare petitioners' 1980 return. Mr. Suivski understood that Mr. Carey, because of the profitability and volume of Mr. Carey's investment-related activities, did not desire to continue to prepare petitioners' returns. During 1980, ERL, in which Mr. Suivski invested as a limited partner, entered into a lease agreement to mine and market, as lessee, all of the minable and merchantable coal underlying certain land in Harlan County, Kentucky. The lease transaction and the activities of ERL were the subject of this Court's opinions in the Coggin case and Bauman v. Commissioner, T.C. Memo. 1988-122. In *301 Bauman v. Commissioner, supra (the Bauman case), this Court held that the royalty obligations of ERL under its lease agreement were not "substantially uniform" and were not "paid at least annually" and, thus, were not deductible as advanced royalties paid or accrued "as a result of a minimum royalty provision" under section 1.612-3(b), Income Tax Regs. Respondent's motion for partial summary judgment on the minimum royalty provision issue was granted in that case. The opinion in the Bauman case was limited to the question whether the royalty obligation qualified under a minimum royalty provision under section 1.612-3(b), Income Tax Regs.
In the Coggin case, this Court decided, among other things, that the coal lease transaction of ERL had no economic substance and that ERL did not have an actual and honest profit objective in its coal mining activity. Consequently, this Court, in the Coggin case, sustained respondent's determinations that the coal lease transaction was a sham devoid of economic substance and that ERL was not engaged in an activity for profit. Accordingly, the Court sustained respondent's disallowance of all deductions and credits related *302 to ERL claimed by the taxpayer in the Coggin case. Energy Resources, Ltd.
In this case, petitioners alleged in their petition: These taxpayers do not have any of the books and records of Energy Resources, Ltd. or Virginia City Mining and do not have the financial resources to defend Energy Resources, Ltd. and/or Virginia City Mining Partnerships and the tax positions taken or arguments made by the partnership's tax partner when and if they were in fact examined by the Internal Revenue Service; therefore, if the tax partners of these two partnerships have already entered into a binding agreement with the Internal Revenue Service regarding the losses that were disallowed to the partnerships and/or if there are court rulings deciding the issues involving these two partnerships, the taxpayer in this cause of action will abide by those agreements and/or court rulings. [Emphasis added.]
Petitioners further alleged in their petition, "As stated before, the Petitioners will abide by any binding agreement between Energy Resources, Ltd. and the Internal Revenue Service or by a court ruling on these issues." (Emphasis added.) At trial, petitioners presented no *303 evidence with respect to ERL. Respondent's expert witness, who testified in the Coggin case, testified at the trial of this case. Additionally, respondent submitted some of the same documentary evidence which was presented in the Coggin case. Accordingly, the Court's findings of fact in the Coggin case with respect to ERL apply and are found to constitute the facts of this case. Petitioners claimed the following partnership losses from ERL on their 1980 and 1981 Federal income tax returns: Year
Partnership Loss
1980
($ 49,731)
1981
(  62,522)
Petitioners also claimed an investment credit of $ 8 for 1980 and subsequently claimed an investment credit of $ 141 for 1981 as a result of Mr. Suivski's investment as a limited partner in ERL. Petitioners subsequently filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1980. In this amended return, petitioners claimed a loss from another unrelated partnership which resulted in petitioners' realization of a net operating loss of $ 46,167 for 1980, available for carryback to prior years. As a result of the 1980 amended return, petitioners were further able to carry back unused foreign tax and investment *304 credits from 1980 and 1981 to prior years. Petitioners also filed Forms 1040X for 1977, 1978, and 1979, in which they carried back and deducted portions of the $ 46,167 net operating loss from 1980. Petitioners, in their 1977 and 1978 amended returns, claimed refunds of the tax previously paid for 1977 and 1978. In their amended 1979 return, petitioners recomputed their tax liability and paid additional tax, interest, and penalty for 1979. In computing their revised 1979 tax liability, petitioners deducted a portion of the $ 46,167 net operating loss from 1980 and utilized their unused foreign and investment credits from 1980 and 1981. In November 1983, the Internal Revenue Service issued refunds, plus interest, to petitioners for 1977 and 1978. Petitioners and respondent timely executed agreements, under section 6501(c)(4), to indefinitely extend the period for assessment for 1980 and 1981. Each agreement provided that any amount of Federal income tax due for the taxable year could be assessed on or before the 90th day after (1) the Internal Revenue Service office considering the case receives a Form 872-T from the taxpayers, (2) the Internal Revenue Service mails a Form 872-T *305 to the taxpayers, or (3) the Internal Revenue Service mails a notice of deficiency to the taxpayers for the taxable year covered by the agreement. Neither party ever exercised the option to terminate the agreements through Form 872-T. On their 1988 return, petitioners reported adjusted gross income of $ 80,427. [2]
Notice of Deficiency and Petition
Respondent issued a notice of deficiency for 1977, 1978, 1979, and 1981 on June 20, 1989. In the notice of deficiency, respondent disallowed the partnership losses petitioners claimed in respect of ERL for 1980 and 1981. Respondent further disallowed the investment credits petitioners claimed for 1980 and 1981 as a result of Mr. Suivski's investment as a limited partner in ERL. As a result of these and other adjustments, respondent also disallowed the net operating loss *306 and credit carrybacks from 1980 and 1981 claimed by petitioners for 1977, 1978, and 1979. Petitioners, as noted earlier, alleged they would abide by any Court ruling on the merits of the ERL promotion. In the absence of a Court ruling, petitioners alleged their entitlement to the deductions and credits claimed on their returns from ERL. Alternatively, petitioners alleged their entitlement to a deduction for their cash investment in ERL. Petitioners further maintained that they were not liable for the additions to tax and additional interest. Petitioners lastly asserted that the statute of limitations under section 6501 barred assessment of tax for 1977, 1978, and 1979, and that petitioner-wife was an innocent spouse. OPINION Statute of Limitations
Petitioners do not contend that the statute of limitations bars respondent from assessing taxes against them for 1980 and 1981 because of the agreements which indefinitely extended the period of limitations for these 2 years. [3] For 1977, 1978, and 1979, the deficiencies, additions to tax, and additional interest are attributable to the disallowance by respondent of the carryback of net operating losses and investment credits *307 from 1980 and 1981. Petitioners' defense is that respondent is barred from assessment and collection of taxes, under section 6501, for 1977, 1978, and 1979 to the extent that the deficiencies, additions to tax, and interest for each of these years exceeds the refunds or credits allowed for such years. Where a deficiency is attributable to a net operating loss carryback, section 6501(h) provides that the deficiency "may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss * * * may be assessed." Thus, when a taxpayer and the Internal Revenue Service (IRS) agree under section 6501(c)(4) to extend the period of limitations for a year in which a net operating loss is sustained, the period of limitations for the earlier year or years to which the loss is carried back is also extended by virtue of section 6501(h). Centennial Savings Bank v. United States, 887 F.2d 595, 599 (5th Cir. 1989). *308 A similar rule applies where the deficiency for an earlier year is attributable to the disallowance of an investment credit carryback. Sec. 6501(j). Petitioners do not dispute the meanings of section 6501(h) and (j). They contend, however, that these provisions do not apply and that section 6501(m) governs their case. Section 6501(m) provides: (m) Tentative Carryback Adjustment Period. -- In a case where an amount has been applied, credited, or refunded under section 6411 (relating to tentative carryback and refund adjustments) by reason of a net operating loss carryback, a capital loss carryback, an investment credit carryback, a work incentive program carryback, or a new employee credit carryback to a prior taxable year, the period described in subsection (a) of this section for assessing a deficiency for such prior taxable year shall be extended to include the period described in subsection (h) or (j) whichever is applicable; except that the amount which may be assessed solely by reason of this subsection shall not exceed the amount so applied, credited, or refunded under section 6411, reduced by any amount which may be assessed solely by reason of subsection (h) or (j) *309 as the case may be. [4]
Petitioners contend that, under section 6501(m), respondent is barred from assessment of taxes for 1977, 1978, and 1979 in excess of the refunds or credits allowed petitioners for these years. Petitioners further contend that the refund or credit for each year constitutes a cap or maximum amount by which the totality of the taxes, additions to tax, and interest for each year can be assessed. Petitioners received refunds of $ 2,104 and $ 10,800 for 1977 and 1978, respectively, and no refund for 1979. Thus, their contention is that the maximum amount of taxes, additions to tax, and interest, for each year, cannot exceed $ 2,104 for 1977, $ 10,800 for 1978, and zero for 1979. Petitioners' argument must fail for two reasons. First, as a condition for section 6501(m) to apply, the refunds or credits for the carryback years must have been allowed pursuant to section 6411. Petitioners *310 did not apply for their credits or refunds for 1977 and 1978 under section 6411. Section 6411 relates to tentative carryback and refund adjustments whereby taxpayers sustaining a net operating loss or having unused investment credit may avail themselves of the "quick refund" procedures of section 6411. Under section 1.6411-1(b)(2), Income Tax Regs., an application for tentative refund does not constitute a claim for credit or refund. Crismon v. United States, 550 F.2d 1205 (9th Cir. 1977). In contrast, the filing of a Form 1040X does constitute the filing of a claim for credit or refund. Sec. 301.6402-3(a)(2), Proced. & Admin. Regs. To apply for a tentative carryback or refund under section 6411, taxpayers who are individuals are required to use IRS Form 1045, Application For Tentative Refund. Sec. 1.6411-1(b)(1), Income Tax Regs. Petitioners here did not file a Form 1045 for 1977 and 1978. Instead, petitioners filed Forms 1040X, Amended U.S. Individual Income Tax Return, for 1977, 1978, and 1979. These amended returns constituted an application for credit or refund but did not constitute an application for a tentative carryback and refund *311 adjustment under section 6411. Therefore, since petitioners did not obtain their refunds for 1977 and 1978 pursuant to section 6411, section 6501(m) is not applicable. The second reason for rejecting petitioners' argument on the applicability of section 6501(m) is that this provision allows the IRS, where a tentative refund or credit application has been filed under section 6411, to assess a deficiency against the taxpayer which is not attributable to the net operating loss or investment credit carryback, subject to certain limitations provided in section 6501(m). This is best explained by Jones v. Commissioner, 71 T.C. 391, 397 (1978), wherein this Court stated: where respondent uses the extended limitations period of section 6501(h), he may assess a deficiency only to the extent that the deficiency is attributable to the application to the taxpayer of a loss carryback. Respondent may not use the extended limitations period to assess a deficiency attributable to items unrelated to the loss carryback.
However, section 6501(m) [now denominated as section 6501(k)] supersedes subsection (h) restriction on the nature of deficiencies that may *312 be assessed within the extended period.
* * * Where there is a refund granted under section 6411 by reason of a net operating loss carryback, respondent may thus assess within the extended period a deficiency on grounds not attributable to the carryback so long as the deficiency does not exceed the amount of the refund reduced by any amount of the deficiency actually attributable to the carryback. Maxcy v. Commissioner, 59 T.C. 716, 730 (1973). In other words, the amount of deficiency attributable to the disallowance of the loss carryback is assessable under and subject to the limitations of 6501(h). And the rest of the total tentative refund is assessable under and subject to the limitations of * * * [section 6501(k)]. See H. Rept. 2161, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 902, 905; sec. 301.6501(m)-1(a)(2) (example), Proced. & Admin. Regs.
In the instant case, the deficiencies determined by respondent for 1977, 1978, and 1979 are attributable to disallowance of the carryback losses and credits from 1980 and 1981. With respect to the ERL adjustments at issue, the applicable statute of limitations *313 provisions for 1977, 1978, and 1979 are, therefore, section 6501(h) and (j), not section 6501(m). Jones v. Commissioner, supra; sec. 301.6501(m)-1(a)(2) (example), Proced. & Admin. Regs. Since section 6501(m) is not applicable here, the Court need not address petitioners' other argument that their maximum liability for each year (taxes, additions to tax, and interest) is limited to the amount of the credit or refund for such year. Accordingly, the Court holds that respondent is not barred by the statute of limitations with respect to petitioners' 1977, 1978, and 1979 tax years by virtue of the agreements which extended the period of limitations for 1980 and 1981. The Deductions and Credits Claimed in Respect of ERL
In the Coggin case, this Court held that there was no economic substance to ERL, and that the transactions of ERL had no business purpose other than the creation of tax benefits. This Court further found that ERL's activity was not engaged in for profit under section 183. As a result of these findings, the Court found it unnecessary in the Coggin case to address the other grounds asserted by respondent for disallowing *314 the deductions claimed by petitioners. The findings of fact in the Coggin case have been made part of the factual findings of this case. Petitioners here presented no evidence at trial which would establish as erroneous the findings of this Court in the Coggin case with respect to ERL. Moreover, in their petition, petitioners agreed that they had no evidence to present on the merits of their investment in ERL, and that they would abide by any Court ruling on the issues involving ERL. Therefore, for the reasons set out in the Coggin case, this Court sustains respondent's disallowance of the deductions and credits claimed by petitioners in respect of ERL. Whether Petitioners Are Otherwise Entitled to ERL Deductions
Petitioners contend that, "whether or not * * * [ERL] was created by its promoters for business purposes and whether or not it was devoid of economic substance, * * * [Mr. Suivski's] actual * * * [cash] investment in the project * * * should be allowed as a deductible loss * * * for the years in question." Respondent, on the other hand, argues that petitioners have failed to establish their entitlement to any deduction under section 165. Respondent *315 alternatively contends that petitioners have not properly raised the issue of whether they are entitled to such a deduction because they failed to raise this issue in their petition. Petitioners bear the burden of proving they sustained a deductible loss for the years at issue. Rule 142(a). Petitioners have failed to carry their burden of proving that they sustained either a theft loss under section 165(c)(3) or a loss incurred on a transaction entered into for profit under section 165(c)(2). Section 165(a) allows as a deduction any theft loss sustained during the taxable year and not compensated for by insurance or otherwise. Under section 165(e), a theft loss is treated as sustained during the taxable year in which a taxpayer discovers the loss. Moreover, if in the year of discovery there exists a claim for reimbursement as to which there is a reasonable prospect of recovery, no loss is treated as sustained until the taxable year in which it can be ascertained with reasonable certainty that no such reimbursement will be received. Secs. 1.165-1(d)(2) and 1.165-8(a)(2), Income Tax Regs.
Regardless of whether the issue is properly before the Court, petitioners have failed to *316 meet their burden of proof. Whether a theft occurred must be determined under the laws of the state or jurisdiction where the alleged loss occurred. Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960). Whether a "theft" has occurred for purposes of section 165 is thus largely a matter of State law. Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956). Petitioners have not established that a theft under State law occurred. Even if petitioners have not established a theft loss, they are otherwise not entitled to a deduction under section 165(c)(2) for the cash they invested in ERL. In Illes v. Commissioner, T.C. Memo. 1991-449, affd. 982 F.2d 163 (6th Cir. 1992), this Court held that a taxpayer is not entitled to a deduction for cash investments in a transaction where the transaction lacked economic substance and was a complete sham, even though the taxpayer may have had a subjective intent *317 to invest in the transaction for profit. Petitioners, therefore, are not entitled to any deduction for their out-of-pocket investment in ERL. Additions to Tax
Section 6653(a) for 1977, 1978, and 1979 and section 6653(a)(1) for 1981 provide for an addition to tax equal to 5 percent of the underpayment if any part of an underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) for 1981 provides for an addition of 50 percent of the interest on that portion of the underpayment attributable to negligence. Negligence under section 6653(a) is the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). An addition to tax under section 6653(a) was determined against petitioners for 1977, 1978, and 1979, and under section 6653(a)(1) and (2) for 1981. Petitioners bear the burden of proof in establishing that they are not liable for such additions to tax. Rule 142(a). Petitioners *318 contend that Mr. Suivski acted reasonably and in reliance on the professional advice of Robert Carey, Mr. Suivski's investment adviser and return preparer. In his testimony, Mr. Suivski acknowledged receiving and examining the ERL offering materials, a considerable portion of which was devoted to a discussion of potential tax benefits. He, however, claimed to have made only a limited examination of the offering materials. Mr. Suivski contends that he invested in ERL solely to make money, and that he was not interested in any tax benefits. He further maintains that Mr. Carey had not discussed the tax implications of the investment with him. The Court finds Mr. Suivski's testimony self-serving and, moreover, questions whether petitioners, in fact, had a reasonable basis for relying on Mr. Carey's alleged advice in claiming deductions in respect of ERL on their 1980 and 1981 individual returns. It was not established whether Mr. Carey or petitioners' other return preparer had any first-hand knowledge, knew all of the relevant facts concerning ERL's coal lease venture, or was qualified to render an opinion on the economic feasibility of the coal venture. See Collins v. Commissioner, 857 F.2d 1383 (9th Cir. 1988), *319 affg. Dister v. Commissioner, T.C. Memo. 1987-217; Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Mr. Carey, moreover, was not an outside, unbiased, objective adviser. The record reflects that Mr. Carey was acting as a representative for the individuals or entities promoting the various investments recommended to Mr. Suivski, and that Mr. Suivski knew or should have known of this conflict of interest on Mr. Carey's part. See Rybak v. Commissioner, supra at 565. Mr. Suivski is not an uneducated, inexperienced investor of moderate means. See Blocker v. Commissioner, T.C. Memo. 1992-725. Although reliance on the advice of professionals may defeat a finding of negligence, the Court holds that petitioner has not shown the purported reliance in the instant case was reasonable. See Freytag v. Commissioner, 89 T.C. 849, 889 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.    , 111 S.Ct. 631 (1991). Consequently, the Court sustains respondent's determinations *320 that petitioners are liable for additions to tax under section 6653(a) for 1977, 1978, and 1979, and additions to tax under section 6653(a)(1) and (2) for 1981. Respondent, in an amended answer, asserted the addition to tax against petitioners under section 6659 for 1981. On this addition, respondent bears the burden of proof. Rule 142(a). Section 6659 provides for an addition to tax for underpayments of tax attributable to valuation overstatements. A valuation overstatement exists, among other situations, if the adjusted basis of property claimed on any return equals or exceeds 150 percent of the correct amount of the basis. No addition is imposed under section 6659 unless the underpayment in tax attributable to the valuation overstatement is at least $ 1,000. To the extent a taxpayer claims deductions that are disallowed on grounds separate and independent from the alleged valuation overstatements, the resulting underpayments are not regarded as attributable to valuation overstatements. Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). For instance, where certain payments are not deductible *321 as advanced minimum royalties under section 1.612-3(b), Income Tax Regs., because they fail to meet certain requirements of the regulations, the taxpayer -- regardless of any alleged valuation overstatements -- is not entitled to any deductions with respect to such payments. Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416; McCrary v. Commissioner, 92 T.C. 827, 851-855, 859-860 (1989); Todd v. Commissioner, supra.See Ferrell v. Commissioner, 90 T.C. at 1203-1204. Respondent contends that petitioners are liable for an addition to tax for valuation overstatement for 1981, because petitioners, on their return, overstated Mr. Suivski's adjusted basis for his partnership interest in ERL. Respondent claims Mr. Suivski's correct adjusted basis in his partnership interest was far less than the basis which petitioners reported, and that petitioners are liable for the addition to tax under section 6659. This Court has sustained respondent's disallowance of the deductions and credits petitioners claimed *322 with respect to ERL on several grounds. These grounds included: (1) The "royalty obligations" of ERL under its lease agreement were not "substantially uniform" and were not "paid at least annually" and, therefore, did not qualify as advanced royalties accrued "as a result of a minimum royalty provision" under section 1.612-3(b), Income Tax Regs., Bauman v. Commissioner, T.C. Memo. 1988- 122; and (2) the activities of ERL were an economic sham, had no business purpose, and its activities were not engaged in for profit, Coggin v. Commissioner, T.C. Memo. 1993-209. Neither of these grounds, however, necessarily turned on the value or overvaluation of Mr. Suivski's partnership interest. The Court believes that the adjusted basis of the partnership interest is too attenuated to these grounds, upon which it has disallowed petitioners' claimed deductions and credits in respect of ERL, to support the imposition of a section 6659 addition to tax. McCrary v. Commissioner, 92 T.C. at 851-855, 859-860. See Ferrell v. Commissioner, 90 T.C. at 1203-1204. The Court concludes, *323 therefore, that respondent has failed to establish that petitioners are liable for the addition to tax under section 6659 for 1981. Rule 142(a). Additional Interest
Section 6621(c) provides for an increased rate of interest with respect to any "substantial underpayment" of tax in any taxable year "attributable to 1 or more tax-motivated transactions" if the amount of the underpayment for such year so attributable exceeds $ 1,000. Section 6621(c)(3)(A) generally lists the types of transactions which are considered "tax-motivated transactions". Under section 6621(c)(3)(A)(v) a "tax-motivated transaction" includes any sham or fraudulent transaction. Additionally, section 6621(c)(3)(B) authorizes the Secretary by regulation to specify additional types of transactions which will be treated as tax-motivated transactions. Section 301.6621-2T, Q & A-4, Temp. Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984), states that any deductions disallowed for any period under section 183 are considered to be attributable to a tax-motivated transaction. As with the section 6659 addition to tax, the section 6621(c) increased rate of interest does not *324 apply to deductions disallowed on separate and independent grounds -- such as deductions which the Court here has held are not allowable in accordance with the requirements for advanced minimum royalty payments under section 1.612-3(b), Income Tax Regs. -- that do not fall within the specified categories of tax-motivated transactions. McCrary v. Commissioner, 92 T.C. at 858-860. Accordingly, to the extent that any underpayment of tax is attributable to the disallowed advanced minimum royalty payments, petitioners are not liable for the increased rate of interest under section 6621(c). However, to the extent that any underpayment in tax is attributable to deductions and credits disallowed solely on the grounds of economic sham and lack of profit objective, petitioners are potentially liable for additional interest. Petitioners, however, contend that the additional interest under section 6621(c) cannot be imposed against them, for 1977, 1978, and 1981, as a result of the disallowed net operating loss carryback from 1980. They argue that section 301.6621-2T, Q & A-8, Temp. Proced. & Admin. Regs., 49 Fed. Reg. 50393 (Dec. 28, *325 1984), provides that a net operating loss carryback is "not taken into account, however, in determining the amount of the tax-motivated underpayment or the amount of the underpayment attributable to fraud or negligence for periods before the last day prescribed for filing the income tax return for the taxable year in which the carryback arises". Petitioners misconstrue section 301.6621-2T, Q & A-8 of the regulations. The regulation provides only that a net operating loss carryback will not reduce the amount of the additional interest under section 6621(c) calculated for a year in which there is already an underpayment attributable to a tax-motivated transaction. In so providing, the regulation promulgates the same well-established rule applicable in the case of additions to tax for fraud under section 6653(b) or additions to tax for negligence under section 6653(a). A net operating loss carryback to a year in which there is an underpayment attributable to fraud or negligence will not cause a reduction in the amount of the fraud or negligence addition to tax calculated and imposed against a taxpayer for such year. Auerbach Shoe Co. v. Commissioner, 21 T.C. 191 (1953), *326 affd. 216 F.2d 693 (1st Cir. 1954); Pusser v. Commissioner, a Memorandum Opinion of this Court dated Dec. 7, 1951, affd. per curiam 206 F.2d 68 (4th Cir. 1953). See further Blanton Coal Co. v. Commissioner, T.C. Memo. 1984-397. This rule has nothing to do with the situation presented in the instant case, where disallowance of the net operating loss carryback deduction itself results in an underpayment "attributable to a tax-motivated transaction". Indeed, this Court has sustained additional interest under section 6621(c) where underpayments attributable to tax-motivated transactions resulted from the disallowance of net operating loss carrybacks. E.g., Estate of Carberry v. Commissioner, 95 T.C. 65 (1990), affd. 933 F.2d 1124 (2d Cir. 1991); Soriano v. Commissioner, 90 T.C. 44 (1988). Petitioners will be liable for additional interest under section 6621(c) for 1977, 1978, and 1981, assuming their respective underpayments for each year attributable to tax-motivated transactions exceed $ 1,000, to the extent *327 that the underpayments are attributable to the deductions or credits disallowed solely on the grounds of economic sham and lack of profit objective. Innocent Spouse
Petitioners contend that Mrs. Suivski is entitled to relief under section 6013(e) as an innocent spouse. Under section 6013(e), the taxpayer must prove for each year at issue that: (1) A joint return was filed; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return; (3) in signing the return, the taxpayer did not know, and had no reason to know, of the substantial understatement; and (4) under all the facts and circumstances, it is inequitable to hold the taxpayer liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1); Purcell v. Commissioner, 86 T.C. 228, 234-235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Failure to meet any of these requirements precludes a taxpayer from qualifying as an innocent spouse. Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. on this issue and revg. on another issue T.C. Memo. 1984-310; *328 Estate of Jackson v. Commissioner, 72 T.C. 356, 362 (1979). The parties agree that joint income tax returns were filed for the years in question, satisfying section 6013(e)(1)(A). However, the more relevant question here relates to whether Mrs. Suivski meets the requirements of section 6013(e)(1)(C), that, in signing the returns, she did not know and had no reason to know of the substantial understatement. Petitioners contend that, under their common ancestral background, the husband controls and dominates the marital regime, which includes making all financial and business decisions. According to petitioners, the wife plays no role in these decisions and is submissive to her husband's actions. In other words, her role is relegated to that of a passive housewife. Thus, petitioners argue that the investment in ERL was made by Mr. Suivski alone, and Mrs. Suivski had no choice but to follow and accept her husband's decision. Accordingly, petitioners submit that Mrs. Suivski qualifies as an innocent spouse under section 6013(e). The cases hold that, in determining whether a taxpayer had reason to know of the substantial understatement, the question *329 is whether, at the time of signing the return, a reasonable person in the taxpayer's circumstances could be expected to know of the transaction or transactions giving rise to the substantial understatement. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Shea v. Commissioner, supra.
Mrs. Suivski, rather than being a passive housewife, enjoyed prominent positions of employment prior to and during the years in question. She possessed an associate college degree, she was assistant to a corporate executive in charge of a Latin-American Division, she accompanied Mr. Suivski to Saudi Arabia, she was employed by ARAMCO from 1978 to 1981, and, upon their return to the United States, she was employed as a bank officer with a large bank. Mrs. Suivski admitted she not only signed the income tax returns for the years in question but also reviewed the returns. The investment by Mr. Suivski in ERL was not made covertly. In Travers v. Commissioner, T.C. Memo. 1982-88, this Court held a wife did not qualify as an innocent spouse *330 under section 6013(e) merely because she exercised no management or control over a real estate activity of her husband, which gave rise to the understatement. Thus, Mr. Suivski's alleged dominance over management of the marital regime is not a basis upon which Mrs. Suivski can claim relief as an innocent spouse. On this record, therefore, the Court concludes that section 6013(e)(1)(C) has not been satisfied in that petitioners have failed to establish that, in signing the returns, Mrs. Suivski did not know and had no reason to know of the transaction giving rise to the understatement. [5] *331 With this finding, the Court finds it unnecessary to pass upon the other requisites of section 6013(e). [6] Mrs. Suivski, therefore, is not entitled to relief as an innocent spouse under section 6013(e) as relates to the ERL investment. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. For 1977, 1978, and 1979, the addition to tax is under sec. 6653(a)↩.
2. Because the notice of deficiency was issued in 1989, petitioners' adjusted gross income for the "preadjustment year" becomes material for purposes of the sec. 6013(e)↩ innocent spouse issue.
3. Only the year 1981 is before the Court in this proceeding.↩
4. Sec. 6501(m) was redesignated sec. 6501(k)↩ in the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 698.
5. Although the parties did not cite Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), the Court has considered that case in concluding that Mrs. Suivski did not satisfy section 6013(e)(1)(C). In the Price case, the Ninth Circuit held that the ignorance of a spouse with respect to the transaction giving rise to the understatement in tax must extend beyond the spouse's ignorance of the legal consequences of the transaction. The Court found in the Price↩ case that, although the wife knew certain facts about the questioned transaction, there were other facts she was not knowledgeable of, and her husband took advantage of his wife's lack of understanding of such facts and misled her about the transaction. Thus, the Court found that, at the time the return was filed, Mrs. Price could not have been expected to know that the return contained a substantial understatement of taxes. The facts here differ. There was no showing that Mr. Suivski misled or took advantage of his wife. On the contrary, Mrs. Suivski had as much knowledge of the transaction as Mr. Suivski had; Mrs. Suivski simply had no input in the making of the decision to enter into the transaction. There is no evidence that Mrs. Suivski's ignorance extended beyond ignorance of the legal effects of the transaction.
6. This trial was limited to the ERL adjustment. There are other adjustments remaining at issue which may affect the section 6013(e)↩ issue. The Court here makes no findings with respect to the adjustments unrelated to ERL.